**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                      :
JOHN DWYER,                           :        CIVIL ACTION
                                      :
                    Petitioner,       :
                                      :
             v.                       :        NO. 07-4996
                                      :
ROBERT SHANNON, et al.,               :
                                      :
                    Respondents.      :
_____:

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

<u>**REPORT AND RECOMMENDATION**</u>

Presently before the Court is a <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus filed by the Petitioner, John Dwyer ("Petitioner"), pursuant to 28 U.S.C. section 2254.  Petitioner is currently incarcerated in the State Correctional Institution in Frackville, Pennsylvania. For the reasons that follow, it is recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

**I.    <u>PROCEDURAL HISTORY</u>.**[1]

Petitioner shot and killed Charles Moore in North Philadelphia on October 18, 2001.[2] On September 23, 2003, a jury

_____

[1] This information is taken from the Petition, the Response, and the documents attached thereto.

[2] The Superior Court, citing to the Commonwealth's brief, set forth the factual history as follows:

> On October 18, 2001, at approximately 4:00 p.m., Daryl Nelson and the victim, Charles Moore, were standing on the corner of Dauphin and Bouvier Streets in North Philadelphia. They had just ordered hamburgers from a neighborhood store and were eating. [Petitioner], who

was a friend of Mr. Nelson and known in the
neighborhood as "Buda," approached Mr. Moore and asked
him if he knew where a man by the name of Hakeem was.
Mr. Moore responded that Hakeem would be back shortly,
and turned his back to [Petitioner] and continued
eating. Mr. Nelson then left the street corner to meet
a friend, Darnell Scott, who had just driven up in a
white Buick and parked on the opposite curb. As Mr.
Nelson stepped out onto the street, [Petitioner] fired
two gunshots from a .38 caliber revolver at Mr. Moore
and fled up Dauphin Street.

Mr. Nelson. . . immediately called for an ambulance. .
. . Mr. Moore was pronounced dead at 4:35 p.m. Mr.
Moore had suffered fatal gunshot wounds to his chest
and forearm; the former shot traveled through his left
lung, his heart, his diaphragm and his liver.

On the evening of the shooting, Police Officer Michael
Cannon interviewed Mr. Nelson, who identified
[Petitioner], also known as "Buda," as the shooter.
Mr. Nelson stated that [Petitioner] was wearing blue
jeans and a black hoody and had fled up Dauphin Street
after the shooting. Mr. Nelson also provided the
police with [Petitioner's] address and identified him
from a photo array later that evening at the police
department. Darnell Scott, Jr., who was in the white
Buick with his father at the time of the shooting,
also gave a statement to police. He saw [Petitioner],
who was wearing a black hoody, approach the victim and
then flee with a gun after the shooting. He was also
able to identify [Petitioner] as the shooter from a
photo array.

A warrant for [Petitioner's] arrest was issued [on
October 18, 2001], but [Petitioner] remained a
fugitive until November 13, 2001, when authorities in
Maryland caught him in the county of Anne Arundel at
the Budget Plaza Motel, where he had checked in with
his girlfriend, Tiffany Jackson, the previous day.
Detective Kevin King and several other police officers
knocked on the door of [Petitioner's] motel room. Ms.
Jackson opened the door and claimed [Petitioner] was
not there. Moments later, [Petitioner] was seen
sprinting across the motel room and jumping off the
second floor balcony. Police chased him on foot across
a busy intersection on Ritchie Highway. Upon his
capture, [Petitioner] blurted out that he was wanted
for murder in Philadelphia. A search of his motel room
revealed a stash of 57 grams of cocaine, some 125
baggies used for packaging drugs, a sawed-off shotgun,
shotgun slugs, and 47 rounds of live .9 millimeter
ammunition.

[At trial, Petitioner] took the stand and claimed he
went to visit his aunt and uncle in Maryland at the
time of the shooting, although he could not recall
either when that was or where in Maryland his

2

found Petitioner guilty of first-degree murder and possession of an instrument of crime ("PIC"). On September 24, 2003, the Honorable Sheila A. Woods-Skipper sentenced Petitioner to a term of life imprisonment for the murder conviction and a concurrent term of two-and-a-half to five years for the firearms conviction.

Petitioner filed a notice of appeal and new counsel was appointed to represent Petitioner for appellate proceedings. However, appellate counsel "reviewed the entire record" and determined "that to continue with the appeal would be wholly frivolous." Anders Br. for Appellant, p. 11.[3] Appellate counsel moved for permission to withdraw on March 11, 2004, by filing a brief pursuant to Anders v. California, 386 U.S. 738 (1967). On March 31, 2004, pursuant to Anders protocol, the Superior Court notified Petitioner that, if he wished to raise additional, nonfrivolous issues for appeal, he could file a pro se brief in support of his appeal. Petitioner did not do so. The Superior Court granted counsel's motion to withdraw and affirmed Petitioner's conviction and sentence on August 16, 2004. Commonwealth v. Dwyer, 860 A.2d 1126 (Pa. Super. 2004); Resp.,

---

                        relatives lived. He claimed that he was at his aunt and uncle's home when he was arrested; that he had never owned a gun; and that he did not know he was wanted for murder in Philadelphia.

Commonwealth v. Dwyer, 918 A.2d 784 (Pa. Super. 2004); Resp., Ex. B, at 1-3.

[3] Counsel did note one issue of arguable merit in his Anders brief: "Did reversible error occur as a result of either the failure of the [trial] court to respond to a question posed by the jury during deliberations or as a result of the failure of the trial court to respond to the question on the record?" Anders Br. for Appellant, at 12.

Ex. A. Petitioner did not seek further review by the Supreme Court of Pennsylvania.

On or about September 1, 2004, Petitioner timely filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"). See 42 Pa. C.S.A. § 9541. Counsel was appointed and an amended petition was filed on May 18, 2005. The PCRA court dismissed the petition on September 28, 2005. Petitioner appealed to the Superior Court.[4] The Superior Court affirmed the PCRA court's dismissal on December 27, 2006. Commonwealth v. Dwyer, 918 A.2d 784 (Pa. Super. 2004); Resp., Ex. B. Petitioner then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on September 11, 2007. Commonwealth v. Dwyer, 932 A.2d 74 (Pa. 2007).

Petitioner filed the instant pro se Petition for Writ of Habeas Corpus, accompanied by a Memorandum of Law, on November 27, 2007.[5] Respondents filed a Response to the Petition on February 8, 2008. Petitioner filed a Reply on March 24, 2008. According to Petitioner's submissions, he seeks a determination of the following claims for ineffective assistance of counsel:

---

[4] Petitioner raised the following issues for review: 1) whether trial counsel was ineffective, for failing to request that the trial court use cautionary or limiting instructions, explaining the limiting purpose for which evidence of other criminal activity had been admissible; 2) whether trial counsel was ineffective, for failing to give an opening statement; and 3) whether trial counsel was ineffective, for failing to object to improper comments during the prosecutor's closing statement. Resp., Ex. B, at 4.

[5] On November 29, 2007, the Honorable Robert F. Kelly referred the case to this Magistrate Judge for preparation of a Report and Recommendation.

1. <u>Limiting instruction</u>: Petitioner claims ineffective assistance of counsel because trial counsel "failed to request a cautionary instruction following the introduction of evidence of other criminal acts." Pet., p. 9.

2. <u>Opening statement</u>: Petitioner alleges ineffective assistance of counsel because "[t]rial counsel failed to give an opening statement to the jury." <u>Id.</u>

3. <u>Closing statement</u>: Petitioner argues ineffective assistance of counsel because "trial counsel failed to object to the improper comments and arguments made by the prosecutor during summations." <u>Id.</u>

4. Counsel errors: Petitioner purports that he was constructively denied counsel because trial counsel did not put the prosecution's case through meaningful adversarial testing. Pet'r's Mem. of Law, pp. 15-21.

5. <u>Jury inquiry</u>: Petitioner avers denial of counsel and due process because the trial judge and prosecutor answered a jury question posed during deliberations without defense counsel or Petitioner being present, and the court's answer was not transcribed for the record. Pet., pp. 9-10.

## II. **DISCUSSION**.

### A. **Standard of Review - Habeas Corpus Petitions**.

A habeas corpus petition can only succeed if Petitioner can show that (I) the state court's resolution of his claim was

contrary to, or an objectively unreasonable application of, clearly established federal law and (ii) his claim is exhausted.[6] See 28 U.S.C. § 2254(d)(1); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996).

An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. Williams v. Taylor, 529 U.S. 362, 407 (2000). Clearly established federal laws are the holdings, not the dicta of the Supreme Court. Id. at 390.

**B.    Standard of Review – Exhaustion and Procedural Default.**

Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition. See Anderson v. Harless, 459 U.S. 4, 7 (1982). If a petitioner's claims have not been exhausted, and a petitioner is time-barred from presenting claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits. 28 U.S.C. § 2254(b)(1)(A); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

However, a procedurally defaulted claim may still succeed where a petitioner can show either (I) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of

---

[6] There are exceptions that allow an unexhausted claim to succeed. See infra section II.B.

6

justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 749 (1991). Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." <u>Slutzker v. Johnson</u>, 393 F.3d 373, 381 (3d Cir. 2004)(quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)); <u>Cristin v. Brennan</u>, 281 F.3d 404, 412 (3d Cir.), <u>cert. denied</u>, 537 U.S. 897 (2002)(quoting <u>Coleman</u>, 501 U.S. at 753). Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage.  <u>United States v. Rodriguez</u>, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001)(quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>Keller v. Larkins</u>, 251 F.3d 408, 415-416 (3d Cir. 2001). The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup</u>, 513 U.S. at 327.

**C.   Standard of Review – Ineffective Assistance of Counsel.**

The United States Supreme Court case, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), governs claims of ineffectiveness of counsel. Counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Given this presumption, a petitioner must first prove that counsel was deficient: that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. In addition, a petitioner must prove prejudice, demonstrating that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable." Id. Thus, a petitioner must show a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different." Id. at 694. This determination must be made in light of "the totality of the evidence before the judge or jury." Id. at 695.

Under the revised habeas statute, ineffective assistance of counsel claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996). "Only the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527

U.S. 1050 (1999)(quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)). A petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation. The petitioner must also show that he was deprived of a fair trial. <u>Ramseur v. Beyer</u>, 983 F.2d 1215, 1239 (3d Cir. 1992), <u>cert. denied</u>, 508 U.S. 947 (1993)(citations omitted).

   **D.   Petitioner's Claims.**[7]

      1.   <u>Limiting Instruction</u>.

         Petitioner first argues ineffective assistance of counsel, because trial counsel failed to request an immediate cautionary or limiting instruction after evidence of other criminal acts was used to impeach Petitioner's credibility. Pet., at 9. The trial court gave a limiting instruction at the prosecution's request, but Petitioner protests that: (I) the instruction was given in the general charge to the jury, not "immediately" after the cross-examination of Petitioner that introduced the evidence; and (ii) counsel was ineffective for not requesting the immediate instruction, regardless of whether the jury was eventually instructed. Pet'r's Mem. of Law, at 5-6.

         The trial court explained its inclusion of the limiting

---

[7] Petitioner is currently time-barred from presenting claims in state court, because it has been over a year since August 16, 2004, the conclusion of the direct appeal process for his claims. <u>See</u> 42 Pa. C.S.A. § 9545(b)(1)(PCRA has one-year deadline for state habeas petitions). None of the three exceptions to the deadline apply to this case. <u>See id.</u> Therefore, Petitioner's unexhausted claims will not be reviewed on the merits, as they are procedurally defaulted.

instruction in the general charge:

> While the Supreme Court of Pennsylvania has
> expressed a preference that a limiting
> instruction be given to jurors at the time
> the limited purpose evidence is adduced, it
> has held nonetheless that a required limiting
> instruction may properly be given during the
> general charge.

Resp., Ex. B, at 6 (Super. Ct. PCRA Appeal Op.)(citing Trial Ct.

Op. filed 4/28/06, at 10 (citing Commonwealth v. Johnson, 838

A.2d 663 (2003))). The Superior Court affirmed the trial court's

decision:

> The testimony of which [Petitioner] complains
> was presented to rebut [Petitioner's]
> assertions that he never owned a gun, did not
> own the safe seized in his motel room in
> Maryland, and had no knowledge of the
> contents of the safe, including a gun found
> therein. [citation omitted.] Specifically,
> the day after [Petitioner] testified, the
> Commonwealth presented the rebuttal testimony
> of Anne Arundel County Detective Kevin King,
> who stated, *inter alia*, that, following
> [Petitioner's] apprehension, [Petitioner]
> indicated that he owned the safe located in
> the motel room. [citation omitted.] In
> addition, he attempted to convey to police
> the correct combination to this safe;
> however, such attempt proved unsuccessful due
> to the fact [Petitioner] was upset and could
> not remember the combination. [Footnote,
> citation omitted.]
>
>     A review of the record reveals that,
> following the testimony of Detective King,
> both parties presented closing arguments, and
> then the court charged the jury. It was
> during this charge that the limiting
> instruction was given. . . .
>
> Herein, where the rebuttal testimony of
> Detective King was closely followed by the

10

> court's charge to the jury, we find that the
> trial court did not abuse its discretion in
> not immediately presenting the limiting
> instruction. Consequently, trial counsel was
> not ineffective in this regard. See
> <u>Commonwealth v. Nolan</u>, . . . 855 A.2d 834
> (2004)(noting that counsel cannot be deemed
> ineffective for failing to pursue a meritless
> claim).

<u>Id.</u> at 5-7.

The issue was addressed by the Superior Court in the
PCRA appeal process, so the claim is exhausted. However, the
ineffectiveness claim cannot succeed, because there is no
unreasonable application of federal law by the state court. <u>See</u>
28 U.S.C. § 2254(d)(1). The state courts ruled properly and
proper instructions were delivered to the jury.

First, the state court's decision to deny Petitioner's
claim is not an unreasonable application of federal law, and
Petitioner cites no clearly established United States Supreme
Court precedent that is contrary to the trial court's decision.[8]
A limiting instruction delivered the day after the cross-
examination of the defendant, and the day of rebuttal testimony
regarding other bad acts, is not sufficiently unreasonable as to
constitute a denial of a constitutional right. <u>See</u> <u>Cupp v.</u>

---

[8] Petitioner cites Huddleston v. United States, 485 U.S. 681 (1988), in
support of his argument that "Pennsylvania law requires a limiting instruction
'following' the introduction of other bad acts evidence." Pet'r's Mem. of Law,
at 6. Huddleston's holding - that a district court need not "make a
preliminary finding that the Government has proved the 'other act' by a
preponderance of the evidence before it submits the evidence to the jury" -
does not address limiting instructions and in no way contradicts the trial
court's decision.

Naughton, 414 U.S. 141, 146 (1973). The Superior Court's analysis was not unreasonable, recognizing that the instruction "closely followed" the testimony of rebuttal witness Detective King. Resp., Ex. B, at 6. Detective King provided the last testimony before closing arguments and the court's instructions. The state court's decision was not contrary to federal law.

Second, Petitioner's ineffectiveness claim does not take into consideration that the court could have delivered the instruction of its own volition. Because the jury actually received the limiting instruction, federal law presumes that the jury followed the judge's instruction. See Weeks v. Angelone, 528 U.S. 225, 234 (2000)(citing Richardson v. Marsh, 481 U.S. 200, 211 (1987))("juries are presumed to follow instructions"). As Respondents correctly note, it is a matter of trial strategy to decide whether to request an immediate instruction or to wait for the trial court to give an instruction during the final charge. Resp., at 13. Thus, counsel was not ineffective, and Petitioner was not deprived of a fair, reliable trial. Id. at 687.

2.   Opening Statement.

Petitioner alleges ineffective assistance of counsel because trial counsel failed to give an opening statement to the jury. Pet., at 9. Petitioner contends that, without an opening statement, the jury never received guidance or an outline of the defense's view of the case. Pet'r's Mem. of Law, at 7-8. The

12

issue has been addressed by the Superior Court in the PCRA appeal process, so the claim is exhausted. On the merits, the state courts' reasoning is not contrary to, or an unreasonable application of, federal law.

First, though trial counsel reserved his opening, and then never argued it, there is a strong presumption that trial counsel acted tactically, rather than neglectfully. Yarborough v. Gentry, 540 U.S. 1, 8 (2003). Federal law presumes that seemingly unwise acts can be strategy. Id. at 5 (citing Strickland, 466 U.S. at 690)(counsel is "strongly presumed" to make decisions in exercise of professional judgment); see, e.g., United States v. Cronic, 466 U.S. 648, 666 (1984)(presumed strategic when, during opening, attorney told jury, 'this is my first trial'). "That presumption has particular force" where the reviewing court, as in this case, "has no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." Yarborough, 540 U.S. at 5 (citing Massaro v. United States, 538 U.S. 500, 505 (2003)).

Second, counsel's cross-examination of witnesses during the Commonwealth's case-in-chief provided the jury with the requisite information that would have been delivered in the opening statement. As the Superior Court explained,

> We find that [Petitioner] has failed to establish that the outcome of trial would have been different had counsel chosen the alternative strategy espoused by [Petitioner]

13

(the presentation of an opening statement by
counsel), particularly in view of counsel's
cross-examination of Commonwealth witnesses
concerning the identity of the assailant.
[The jury was properly informed through
defense counsel's cross-examinations that
Petitioner's defense was 'mistaken
identity.']

Resp., Ex. B, at 7. Petitioner has not established that the
proceeding would have resulted differently, because the jury was
informed of the defense strategy by counsel's actions.

Third, the lack of an opening statement does not
automatically imply that Petitioner has been deprived of a fair,
reliable trial. There is no unfettered constitutional right to an
opening statement. United States v. Ciancaglini, 945 F. Supp.
813, 820 (E.D. Pa. 1996)(citations omitted); see Herring v. New
York, 422 U.S. 853, 863 n.13 (1975)(court notes that its opinion
does not imply existence of constitutional right to any oral
argument other than closing). Federal precedent even allows
counsel to waive closing argument in some circumstances.
Yarborough, 540 U.S. at 6 (citations omitted); see Flamer v.
State of Del., 68 F.3d 710, 732 (3d Cir. 1995)(citations
omitted)(attorney waived closing argument in capital murder
case). Therefore, the lack of an opening statement does not deny
Petitioner due process. Because counsel waived an opening
statement, he did not deprive Petitioner of any guaranteed
constitutional rights and was not ineffective for failing to make
an opening statement. See Ramseur, 983 F.2d at 1239.

3.   <u>Closing Statement</u>.

Petitioner argues ineffective assistance of counsel, because trial counsel did not object to allegedly improper comments made by the prosecutor during his closing argument. Pet., at 9. More specifically, Petitioner alleges that, during closing arguments, the prosecutor called the Petitioner a liar multiple times, declared her personal opinion about the facts, and included facts not in trial.[9] Pet'r's Mem. of Law, at 9-14.

The Superior Court reviewed this issue:

> We find that the prosecutor's comments were reasonably derived from eyewitness testimony. . . . A closing argument is just that: argument. These comments from the prosecutor did not create the unavoidable consequence that the jury reached its determination based upon bias and hostility toward [Petitioner] rather than the weight of the Commonwealth's evidence.

Resp., Ex. B, at 9. The issue was addressed by the Superior Court in the PCRA appeal process, so the claim is exhausted. An evaluation of the merits reveals that the state courts' reasoning was not contrary to federal law.

In cases of allegedly prejudicial remarks, a reviewing court must examine the probable effect the prosecutor's closing remarks had on the jury's ability to judge the evidence fairly. <u>United States v. Young</u>, 470 U.S. 1, 12 (1985). The court must evaluate whether the cumulative effect of the remarks "so

---

[9] Petitioner does not cite any evidence that the prosecutor included facts not established in the trial. Therefore, this third claim should be dismissed.

infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). The United States Court of Appeals for the Third Circuit looks to three factors to determine whether the remarks were prejudicial: "the scope of the improper comments in the overall trial context, the effect of any curative instructions given,[10] and the strength of the evidence against the defendant." <u>United States v. Mastrangelo</u>, 172 F.3d 288 (3d Cir. 1999)(citation omitted).

First, in the overall trial context, the comments were not improper. The prosecutor can and should point out discrepancies between the defendant's and other witnesses' testimony. <u>See</u> <u>United States v. Harris</u>, 471 F.3d 507, 512 (3d Cir. 2006). Petitioner's testimony contradicted Detective King's testimony, and the prosecutor is entitled to make an argument for a certain conclusion she hoped the jury would find when weighing the two testimonies.[11] The prosecutor did not cross the line of impropriety and vouch for the credibility of Detective King's testimony. <u>See</u> <u>United States v. Vitillo</u>, 490 F.3d 314, 328-29 (3d

---

[10] There is no indication that any curative instructions were given in this case.

[11] Petitioner's testimony was inconsistent with police testimony regarding his ownership of the gun, his knowledge of being wanted for murder in Philadelphia, and the location of his arrest. <u>See</u> <u>supra</u> n.2. Thus, the prosecutor was entitled to explore the central issue of the case: whether Petitioner lied about being in Maryland at the time of the shooting in Philadelphia. It was reasonable for the prosecutor to dwell on credibility after finding discrepancies between Petitioner's and Detective King's testimony.

Cir. 2007)(prosecutor's "I guarantee you" and "I assure you" constituted vouching); <u>United States v. Brennan</u>, 326 F.3d 176, 183 (3d Cir. 2003)(citing <u>United States v. Walker</u>, 155 F.3d 180, 187 (3d Cir. 1998)(basing credibility judgments on personal knowledge or information outside of testimony constitutes vouching)). Here, the prosecutor was not stating a personal belief, but was discussing a reasonable inference from the evidence evoked during trial.[12] Though the prosecutor's arguments may be considered harsh and repetitive, he did not manipulate or misstate the evidence. <u>Darden</u>, 477 U.S. at 182.[13]

Further, even if the prosecutor's statement was improper, a new trial is not required in light of the strength of the evidence against Petitioner. <u>Vitillo</u>, 490 F. 3d at 329. The following facts present strong evidence of guilt: (I) Petitioner reacted to the arrival of police by running from them across a busy highway; (ii) two witnesses identified Petitioner as the man who approached Mr. Moore; (iii) Petitioner had no corroboration for his alibi because his aunt and uncle did not testify, and he could not remember where they lived; and (iv) drugs and guns were found on his person in Maryland. See <u>supra</u> n.2. Weighing the

---

[12] The prosecutor believed she caught Petitioner in a lie on the stand, and then asked the jury to make a reasonable inference regarding Petitioner's alibi. As the prosecutor stated, "We were able to present evidence to you, Ladies and Gentlemen, that he lied to you from that witness stand. . . . What else did he lie to you about?" Pet'r's Mem. of Law, at 10 (citations omitted).

[13] The prosecutor also told the jury that Petitioner had a motive to lie on the stand. Anybody on the stand facing life imprisonment does; therefore, these words were not improper.

17

scope of the improper comments in the overall trial context, the effect of any curative instructions given, and the strength of the evidence against him, Petitioner has not shown that the prosecutor's remarks had a prejudicial effect on the jury's verdict.

Regarding Petitioner's ineffective assistance of counsel claim, defense counsel did not so seriously err as to deprive Petitioner a fair, reliable trial. See Strickland 466 U.S. at 687. Petitioner has not shown that an objection, which may or may not have been sustained, would have changed the result of the proceeding, especially considering the strength of the evidence against him. Id. at 694-95. In addition, it may have been sound trial strategy not to object to the prosecutor's closing remarks, because an objection would have emphasized those remarks and focused the jury's attention on the defense's concern about the remarks. See, e.g., Buehl, 166 F.3d at 176; United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). Accordingly, this claim must be denied.

4.   Constructive Denial of Counsel.

Petitioner purports that he was constructively denied counsel, because trial counsel did not put the prosecution's case through meaningful adversarial testing. Pet'r's Mem. of Law, at 15-21. More specifically, counsel failed to file notice of an alibi defense, failed to object to inadequate alibi instructions,

and failed to protect Petitioner from bad acts evidence. <u>Id.</u> at 15-21.

This claim has not been fully exhausted in state court and is therefore procedurally defaulted. Petitioner asserts cause and prejudice in his failure to present the issue at the state court level, and he contends that this constructive denial of counsel was a fundamental miscarriage of justice. <u>Id.</u> at 26-27.

a. <u>Cause and Prejudice</u>.

In <u>Murray</u>, the United States Supreme Court set out the parameters on "cause":

> The question of cause for a procedural default does not turn on whether counsel erred . . . [s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under . . . <u>Strickland</u>. . . . Instead, [cause turns on] whether the prisoner can show that *some objective factor external to the defense* impeded counsel's efforts to comply with the State's procedural rule.

477 U.S. at 488 (emphasis added). Petitioner has not alleged any external impediment – outside of appellate counsel – that prevented compliance with the State's procedural rules.[14] Cause is not established merely if appellate counsel erred in finding no meritorious issues. <u>Id.</u>

---

[14] The <u>Murray</u> court continues with two (of the many, it notes,) examples of external impediments: "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or that interference by officials made compliance impracticable. <u>Id.</u> Petitioner has alleged no external impediments along these lines.

Therefore, there is no cause, unless appellate counsel was so deficient in his work as to violate Strickland.

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw . . . accompanied by a brief referring to anything in the record that might arguably support the appeal. . . . [Petitioner must be allowed time] to raise any points that he chooses; the court – not counsel – then proceeds, after a full examination of all the proceedings, to determine whether the case is wholly frivolous.

Anders, 386 U.S. at 744. Following the Anders protocol will "protect counsel from the . . . charge that he was ineffective and had not handled the case with" diligence. Id. at 745. By following Anders procedure, counsel in the instant case did not act deficiently in his duty.[15] See Strickland, 466 U.S. at 687. Furthermore, counsel did not taint the fairness or reliability of the appellate proceedings.[16] Id. In conclusion, appellate counsel

---

[15] Counsel is not deficient for failing to raise every issue requested by the defendant. Jones v. Barnes, 463 U.S. 745, 749 (1983). The right to an appeal does not include the right to bring a frivolous appeal. Smith v. Robbins, 528 U.S. 259, 278 (2000). Counsel can still serve the goal of vigorous and effective advocacy without raising frivolous issues. Barnes, 463 U.S. at 751, 754. In the instant case, appellate counsel is not the cause of the procedural default for neglecting to raise issues he deemed frivolous. Petitioner had the opportunity to raise more issues on direct appeal, but he chose not to file a pro se brief, despite a court order directing him do so. See Resp., Ex. A, at 4.

[16] In Anders, 386 U.S. at 745 (failed to submit brief), Entsminger v. Iowa, 386 U.S. 748, 751 (1967)(waived petitioner's right to full transcript), and Evitts v. Lucey, 469 U.S. 387, 394 (1985)(waived petitioner's opportunity to make case on merits), respective counsels' conduct rendered the appellate proceedings unfair, constituting ineffective assistance of counsel. The instant case is dissimilar, because none of counsel's actions prevented Petitioner's opportunity to raise issues pro se on direct appeal and have them fairly evaluated by the Superior Court.

did not violate Strickland, did not deny Petitioner due process, and did not cause Petitioner's procedural default.[17]

      b.   Fundamental Miscarriage of Justice.

Petitioner's fundamental miscarriage of justice allegation will succeed if he proves that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327. Petitioner claims that defense counsel's failure to put the prosecution's case through meaningful adversarial testing amounted to a fundamental miscarriage of justice. Pet'r's Mem. of Law, at 16. In Cronic, the United States Supreme Court stated:

> When a true adversarial criminal trial has been conducted-even if defense counsel may have made demonstrable errors . . . the kind of testing envisioned by the Sixth Amendment has occurred. . . . But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

United States v. Cronic, 466 U.S. 648, 656-57 (1984). Petitioner has no plausible argument that the trial process lost its confrontational character, or that counsel failed to oppose the prosecution throughout the *entire* process.[18] See Bell v. Cone,

---

[17] If there was cause, there would undoubtedly be prejudice. The error put Petitioner at a substantial disadvantage, Frady, 456 U.S. at 170, now that his claims must go through the fundamental miscarriage of justice test, rather than examination on the merits.

[18] An example of a complete denial of counsel would be a denial of the right to effective cross-examination, as in Davis v. Alaska, 415 U.S. 308, 318 (1974), not three specific errors by counsel, as is alleged in this case.

535 U.S. 685, 697 (2002). Petitioner's argument is that counsel has failed to oppose the prosecution at specific, crucial points of the trial, which is not a constructive denial of counsel claim governed by <u>Cronic</u>; rather, it is an ineffective assistance of counsel claim governed by <u>Strickland</u>. <u>Cone</u>, 535 U.S. at 697-98; <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). Thus, regarding these three specific errors, the court must apply a <u>Strickland</u> standard: proving deficiency and prejudice, with the presumption of sound trial strategy. 466 U.S. at 687.

First, Petitioner asserts that counsel was ineffective for failing to file notice of an alibi defense. Counsel's failure to file the notice was either his error, or Petitioner's fault for not informing counsel that he planned an alibi defense. Petitioner has asserted no evidence that counsel was aware of an alibi defense[19] and counsel cannot be deemed ineffective for Petitioner's failure to inform him. See <u>Ky Minh Pham v. Hickman</u>, 262 F. App'x 35, 39 (9th Cir. 2007)(counsel not ineffective, for failing to ask about alibi that he did not know existed); <u>Gonzalez v. Warren</u>, 2005 WL 1348701, at *9 (E.D. Mich. 2005)(counsel not ineffective for failing to pursue alibi defense, because Petitioner never informed counsel of defense). Regardless, Respondents argue correctly that it is not reasonably

---

[19] The court is inclined to believe that counsel was not informed of the alibi defense. Petitioner "thought" he informed counsel of his alibi, but counsel told the Judge, "This is the first time I heard anything about [an alibi defense]." Pet'r's Mem. of Law, at 17.

probable that an alibi defense without corroboration from Petitioner's aunt, uncle, or girlfriend, would have resulted in his acquittal. See Schlup, 513 U.S. at 327; Resp., at 21, n.3. Because Petitioner still had the opportunity to call his family members to the witness stand, the failure to file notice was not sufficiently egregious as to taint the fairness and reliability of the trial. See Cronic, 466 U.S. at 659, n.26 (no basis for Sixth Amendment violation unless accused shows that counsel's errors undermined trial's reliability).

Second, with respect to the alibi instruction, the trial court charged the jury as follows:

> The defendant testified that he was not present at the scene but, rather, was in Maryland.
> You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving, beyond a reasonable doubt, that a crime has been committed, and that the defendant himself committed it.
> You should consider the fact that the defendant did not provide the proper alibi notice that is required under the law, and that his first indication of the alibi notice was through his testimony.
> The defendant's evidence that he was not present, either by itself or taken together with other evidence, may be sufficient to raise a reasonable doubt of his guilt in your minds.
> If you have a reasonable doubt of the defendant's guilt, you must find him not guilty.

Pet'r's Mem. of Law, at 18 (citation omitted).

Though Petitioner cites three "inadequacies" about the jury instructions, referencing three Pennsylvania Supreme Court case precedents, the trial court followed state law reasonably. Pa. R. Crim. P. 567 states:

> If the defendant fails to file and serve the notice of alibi as required by this rule, the court may exclude entirely any evidence offered by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

Id. The trial court did not violate Pennsylvania law by denying an alibi instruction when a notice of alibi was never filed. See Commonwealth v. Poindexter, 646 A.2d 1211, 1220-21 (Pa. Super. 1994)(denying alibi instruction entirely within discretion and authority of trial court). Therefore, counsel was not ineffective for not requesting an alibi charge, because the trial court, in its discretion, could deny the request. See Strickland, 466 U.S. at 694 (Petitioner must show reasonable probability of different result). Most importantly, Petitioner has not referenced any United States Supreme Court holdings establishing a specific constitutional right to an alibi instruction.[20] Therefore, counsel's failure to request an alibi instruction did not amount to a constitutional deprivation. See Greer, 483 U.S. at 765.

---

[20] Petitioner has averred none because there is no constitutional right to an alibi instruction. See Meyer v. Lanham, 27 F. Supp. 2d 616, 619 (D.Md. 1998).

24

Third, Petitioner claims that counsel failed to protect Petitioner from the introduction of prior bad acts evidence. "Federal habeas corpus relief does not lie for errors of state law." See Estelle v. McGuire, 502 U.S. 62, 67 (1991)(citations omitted). Thus, it is not this Court's role to re-examine state court decisions on state law questions; rather, our review is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citations omitted). Petitioner has referenced no clearly established federal law contrary to the trial court's decision to allow questioning about the drugs and gun found at the scene of Petitioner's arrest. In fact, circumstances surrounding an arrest are generally admissible and relevant. United States v. Smolin, 182 F.2d 782 (2d Cir. 1950). Furthermore, the Federal Rules of Evidence allow for credibility impeachment, which was the prosecutor's purpose in presenting this evidence.[21] See Fed. R. Evid. 608. Lastly, questions about possession of a gun were proper because Petitioner was charged with PIC. Counsel's failure to object to this evidence did not deprive Petitioner of a fair, reliable trial, and does not amount to deficient and prejudicial ineffective assistance of counsel. See Ramseur, 983 F.2d at 1239.

---

[21] As the prosecutor stated in his closing argument, "the evidence of the other firearms evidence [sic] and the drugs that were found on or in Mr. Dwyer's room when he was arrested [was not presented in our case-in-chief] because it has a very limited purpose in being presented to you; and that is the limited purpose is [sic] to show that this defendant lied to you on the witness stand." Pet'r's Mem. of Law, at 10 (citing N.T. 9/24/2003, at 40).

In conclusion, despite Petitioner's three claimed counsel errors, there is no fundamental miscarriage of justice. Petitioner has not proven that, absent counsel's alleged errors, no reasonable juror would have found him guilty. Schlup, 513 U.S. at 329. Petitioner's claim must be denied.

     5.   Jury Inquiry.

Petitioner claims complete denial of counsel and due process, because the trial judge and prosecutor allegedly answered a jury inquiry without involving defense counsel or transcribing the answer for the record. Pet., at 9-10. This claim, waived for the purposes of direct appeal, and not presented to the Superior Court during the PCRA appeal process, is procedurally defaulted. Although Petitioner's trial counsel identified in his Anders brief a possible claim of trial court error on this matter, this claim was not raised as a federal constitutional claim. Petitioner raised the claim in his pro se PCRA petition, but it was not argued on appeal either as a federal constitutional claim or otherwise. Petitioner acknowledges that this claim is procedurally defaulted, but contends that cause and prejudice and a fundamental miscarriage of justice should excuse this default. Pet'r's Mem. of Law at 26-27.

Petitioner contends that appellate counsel's failure to identify and raise the instant claims constitutes cause for the

procedural default. Petitioner has not alleged any external impediment – outside of appellate counsel's failure to identify and raise the instant claims – that caused the procedural default. See supra section II.D.4(a). Counsel did not taint the fairness or reliability of the appellate proceedings, in filing a brief pursuant to Anders v. California, 386 U.S. 738 (1967). See Strickland, 466 U.S. at 687; supra section II.D.4(a). Furthermore, on direct appeal, the Superior Court validated counsel's determination that this issue was frivolous. See Resp., Ex. A, at 4. Therefore, appellate counsel was not ineffective and his actions did not deny Petitioner due process. See Greer, 483 U.S. at 765.

The Superior Court, on direct appeal, examined appellate counsel's Anders Brief and addressed the jury question issue:

> During deliberations, the jury sent the following question to the judge: "Do you have to see the person being shot?". The court advised counsel of the question and solicited their opinion as to the appropriate response. Counsel for the Commonwealth suggested that the jury be requested to clarify the question prior to any response from the court. Defense counsel did not object and the court, on the record, instructed the court crier as follows:
>
>> THE COURT: I'll mark this as Jury Exhibit Number 2. It came out at 12:24 p.m., and it said: "Do you have to see the person being shot?" . . . How would counsel suggest I respond to this question?

> MS. FAIRMAN [FOR THE
> COMMONWEALTH]: The first thing we
> need to say is that we need
> clarification. . . .
>
> THE COURT: Clarify the
> question.
>
> MS. FAIRMAN: And then we can
> deal with it. I assume they're
> saying does the shooter have to see
> him, but I don't even know if
> that's clear. That might be reading
> into it. I don't know what they're
> saying.
>
> THE COURT: That's true. If you
> [the court crier] can ask them to
> clarify their question, we'll see
> if we can answer.
>
> The jury did not send any further
> communications to the court and approximately
> two hours later, returned a unanimous
> verdict. [Petitioner] contends that it was
> reversible error to fail to issue a response
> to the initial inquiry by the jury. We
> disagree.
>
> Trial counsel for [Petitioner] did not
> object to the suggestion that clarification
> of the question be obtained prior to any
> response being made by the court to the jury.
> Thus, any challenge to the decision of the
> trial court to request clarification of the
> question has been waived for purposes of
> direct appeal.

Resp., Ex. A, at 5-6 (citations omitted).

Petitioner's first allegation is that defense counsel

was not merely silent – but absent - while the prosecutor and

trial judge resolved the jury question. When weighing

Petitioner's view of the facts against the Superior Court's

decision, a reviewing court must give "a high measure of deference" to the state court's ruling. See Purkett v. Elem, 514 U.S. 765, 769 (1995); Marshall v. Lonberger, 459 U.S. 422 (1983)(citation omitted).  Additionally, Respondents present a convincing argument to doubt that Petitioner's counsel was absent:

> Although the transcript does not reflect any verbal response from [Petitioner's] counsel, it is difficult to imagine that the trial court would have handled the jury note as formally as it did – assigning it a jury exhibit number, noting the precise time it was received, and then reading the note into the record – but then, when seeking the attorneys' views as to how to respond, overlooking the absence of one of the two attorneys.
>
> Another reason to doubt that [Petitioner's] counsel was truly absent is the court's question "How would counsel suggest I respond to this question?" [Citation omitted.] Although the term "counsel" can refer to one attorney or several, it would be rather odd to call an attorney "counsel" if that attorney is the only one present.

Resp., at 23. Petitioner has not demonstrated sufficient evidence to overturn the Superior Court's decision that defense counsel was in attendance, but silent. Furthermore, even if defense counsel was not in attendance, asking for a clarification is harmless error, because it is not a substantive response to the

jury question. See United States v. Toliver, 330 F.3d 607, 612 (3d Cir. 2003).[22]

Petitioner's next claim is that the jury sent back a clarification which the prosecutor and trial judge answered off the record. There is no evidence to support Petitioner's claim. Again, the Respondents argued cogently:

> [T]he record reflects that the trial court assigned the [previous jury question] a jury exhibit number, noted for the record the exact time it was received, and read it into the record. The absence of any indication in the record that the jury sent back a clarified version of its earlier question – in contrast to the formalities the trial court observed when the initial jury note[s] . . . were received[23] – is fairly strong evidence that no such clarified question was ever sent back.

Resp., at 24. In conclusion, no fundamental miscarriage of justice occurred in the trial judge's handling of the jury question. Petitioner has not established that defense counsel was

---

[22]     In Toliver, the trial judge answered a jury question without the knowledge or presence of defense counsel. 330 F. 3d at 612. The Third Circuit determined that the error would be reviewed under the harmless error analysis, using the standard from Chapman v. California, 386 U.S. 18, 24 (1967), "harmless beyond a reasonable doubt." Toliver, 330 F.3d at 612. In Toliver, despite the trial judge delivering a substantive answer (a transcript of a witness' testimony) to the jury, the Third Circuit concluded that there was "no reasonable possibility" of prejudice from defense counsel's absence. Id. at 613 (quoting United States v. Alessandrello, 637 F.2d 131 (3d Cir. 1980)). Here, there is no reasonable possibility that a non-substantive answer to a request for clarification brought prejudice to the Petitioner.
         The United States Supreme Court recently revised the harmless error analysis to equal the "substantial and injurious effect" standard in Fry v. Pliler, 127 S.Ct. 2321, 2328 (2007). Under this more forgiving standard, it is highly unlikely that a non-substantive answer could have substantially and injuriously affected Petitioner.

[23] The jury sent the trial judge a first question, before the "Do you have to see the person being shot?" question, in which all the proper formalities were taken.

not present, that the jury ever sent back a clarification of its question to the court, or that any objection by defense counsel would have altered the outcome of the trial. See Schlup, 513 U.S. at 327. Accordingly, this claim must be denied.

## III. **CERTIFICATE OF APPEALABILITY**.

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

For all of the foregoing reasons, I make the following:

## RECOMMENDATION

AND NOW, this 30th  day of July, 2008, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an evidentiary hearing. There is no probable cause to issue a certificate of appealability.

Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to timely file objections may constitute a waiver of any appellate rights.

BY THE COURT:


_/s/ Henry S. Perkin_
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE